# STATE OF FLORIDA v OLIVERI

## Case No. 89-19252-MM-A

County Court, Brevard County

March 22, 1990

### APPEARANCES OF COUNSEL

Jane Kerwin, Esquire, Susan Garrett, Esquire, Assistant State Attorneys, for plaintiff.

Robert P. Jordan, Esquire, for defendant.

### OPINION OF THE COURT

JOHN C. ADKINS, County Judge.

Defendant Oliveri was charged with engaging in shellfish relaying activities without a monitor or licensed security guard pursuant to section 16R-7.012(4)(a) of the Florida Administrative Code ("Section 16R"), and 370.021(1), 370.071(1), 370.16(17), and 370.021(2), Florida Statutes.

This case came on for nonjury trial on February 28, 1990, at which

time the Court heard Defendant's Motion to Dismiss under Florida Rules of Criminal Procedure 3.190(c)(4), including the testimony of various clammers, Florida Marine Patrol, and other witnesses, followed by the arguments of the attorneys. The Court makes the following findings of fact:

Relaying shellfish is a practice used in Florida's bays and rivers for harvesting clams. Rakers or clam harvesters wade or boat to riverine areas and harvest the clams with rakes, then "relay" them person by person and boat by boat to the shore, where they are graded and bagged for transport. Anywhere from two to fifteen clammers may be involved in such a relay operation.

Section 16R has two prerequisites for shellfish relaying. The first is a Special Activity License from the Department of Natural Resources (DNR). The license can be obtained only by a person or entity holding a shellfish lease or owning or operating a depuration (clam purifying) plant, whose record indicates they can be bonded. This person, called the "dealer" in Indian River clammer parlance, must "be responsible to assure compliance with all rules and licenses", under Section 16R.

The second Section 16R requirement is that actual relaying activities be monitored by an "approved law enforcement or licensed security guard."[1]

In this case Defendant, a clammer, was hired by Dyer Shellfish, Inc., the dealer, to harvest clams in the Indian River in Brevard County on December 7, 1989, as part of a relay team under Dyer's relay permit. Dyer also hired J & M Security to provide a licensed monitor for the relay teams. A monitor was sent by J & M Security, one Luigi A. Moscardino, but Moscardino was proven to have neither held nor to have applied for approval by the Department of State on that date. Dyer had not verified whether the monitor was in fact licensed.

---

[1] *493.304 CLASSES OF LICENSES. -*

(5) Any person who performs the services of a watchman, guard, or patrolman must have a Class "D" license.

*493.305 APPLICATION FOR LICENSE. -*

(2) Upon submission of a complete application, an applicant for a class "D" license may be employed by an agency as an unarmed watchman, unarmed guard, or unarmed patrolman before such application is approved. "Unarmed" means that no firearm shall be carried or used during official duty, regardless of whether the applicant has any other authority to carry a firearm. If the department denies a class "D" license, the employment of such person shall be terminated immediately. Each person, firm, company, partnership, or corporation shall, upon the employment or termination of employment of a watchman, guard, or patrolman, report such employment or termination immediately to the department and, in the case of a termination, shall report the reason or reasons therefor.

Although Dyer was charged as a codefendant in the case, neither Moscardino nor J & M Security were named as Defendants due to differing enforcement practices as between the Department of State and the Department of Natural Resources.

Applying Section 16R to this case, it is apparent that some conditions are applicable to dealers which could not be complied with by individual clammer relayers. Section 16R could be read to require individuals to undertake responsibility for administrative rule or statutory compliances beyond their control. Although it is clear that individual clammers must deliver shellfish "directly to a designated license location on the same day of harvest", it is not so clear that the individual relayers have any ability to comply with "all the rules and license conditions" set forth in Section 16R.

In particular, Section 16R indicates:

"Shellfish relaying licenses may be issued to any person, firm, corporation, municipality, or other governmental body or agency holding a shellfish lease, or owning or operating a depuration plant —".

Since individual clammers are not shown to be leaseholders or depuration plant owners, as are the dealers, they cannot be issued a special activity license from the Department. They therefore do not have the ability to comply with "all these rules and license conditions" in the same sense as a dealer.

It is of further significance that Defendant is charged under paragraph 4(a) of Section 16R which indicates generally that "all persons — shall comply with these rules and license conditions." However, paragraph (2) of Section 16R states affirmatively that the dealer is "— responsible to assure compliance with all rules and licenses." (emphasis supplied).

This Court construes Section 16R to mean that while individual clammers must have a monitor, they should not be forced, person byperson, to go behind the colorable authority of their own guard who was hired by a dealer they work for. It is the dealer licenseholder as defined by 16R-7.012(2), the monitor himself, and the monitor's employer who are responsible to ensure that the monitor is in fact an "approved law enforcement or licensed security guard" as required by law.

The motion is granted.

DONE AND ORDERED at Melbourne, Brevard County, Florida, this 22nd day of March, 1990.